PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARRIZO (UTICA) LLC | ) | CASE NO. 4:13CV00393 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| CITY OF GIRARD, OHIO, *et al.*, | ) | **MEMORANDUM OF ORDER AND** |
| | ) | **OPINION** [Resolving ECF Nos. 52, 53, |
| Defendants. | ) | and 62] |

**I. Background**

Plaintiff Carrizo (Utica) LLC ("Carrizo") alleges that Defendant City of Girard ("Girard") disavowed a binding oil and gas lease (the "Lease") that Girard originally entered into with Defendant D&L Energy Inc. ("D&L") in 2006. ECF No. 1. The Lease gave D&L permission to conduct oil and gas exploration on four parcels of property in Trumbull County, Ohio. ECF No. 1-2. D&L has built only one well on one of the parcels covered by the Lease. ECF No. 50 at 18. Girard continues to receive revenues from that well.

In 2011, D&L sold most of its interest in the Lease to Carrizo, in a transaction that involved Huntington Energy Group, LLC ("Huntington") as an intermediary. ECF No. 1-6. In January 2012, Girard sent a letter to D&L which D&L contends stated that the Lease was null and void because Girard had failed to comply with certain statutory notice requirements and because D&L had failed to adequately develop the premises. ECF Nos. 1 at 9-10 and 50 at 4-5. D&L also contends that the letter stated that the oil and gas rights conferred by the Lease did not cover oil

(4:13CV00393)

and gas rights below the Clinton Sands formation.  ECF Nos. 1 at 9-10 and 50 at 4-5.

Concerned about the status of the Lease, Carrizo filed a lawsuit asserting numerous causes of action against Girard, D&L, and Huntington.  ECF No. 1.  Against Girard, Carrizo seeks a declaration of the Lease's validity and enforceability, and seeks to enjoin Girard from taking any action to impair the mineral rights that Carrizo acquired from D&L.  Against D&L and Huntington, Carrizo seeks, in the event that the Lease is held invalid, relief on the grounds of rescission, unjust enrichment, breach of contract, negligent misrepresentation, conversion and conspiracy.  ECF No. 1 at 10-12.

Girard, Huntington, and D&L filed answers and asserted affirmative defenses.  ECF Nos. 12, 39, and 50.  Girard filed eight counterclaims against Carrizo and eight crossclaims against D&L and Huntington.  ECF No. 50.  Counterclaims and Crossclaims One through Five contend that the Lease is void or invalid, and includes claims that Girard failed to comply with statutory bidding and notice requirements when entering into the Lease; that the Lease term expired due to the breach of an implied covenant to develop; that the Lease did not include formations below Clinton Sands; that the Lease is void because D&L failed to execute the lease; and that the Lease is void due to D&L's failure to pay delay rentals pursuant to the requirements of the Lease.  *Id.*  Counterclaims and Crossclaims Six through Eight, asserted in the event the Lease is deemed valid, allege that D&L breached the lease by failing to drill three of the four required wells and by failing to pay spud payments and gas allotment fees.  *Id.*

**Motions Resolved In this Order**

D&L moves to dismiss seven of Girard's eight crossclaims, pursuant to Fed. R. Civ. P.

2

(4:13CV00393)

12(b)(6). *See* ECF No. 52. Carrizo moves for judgment on the pleadings on each of Girard's eight counterclaims. ECF No. 53. Carrizo also moves to strike portions of Girard's memorandum opposing Carrizo's motion for judgment on the pleadings. ECF No. 62. The motions are fully briefed and ready for adjudication.[1] For the reasons given, the Court grants in part, and denies in part, Carrizo's motion for judgment on the pleadings and D&L's motion to dismiss. The Court grants Carrizo's motion to strike.

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the complaint must allege enough facts to "raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). It also must "state a claim that is plausible on its face." *Id.* at 570. Upon reviewing a motion to dismiss, the Court shall take the pleadings as true and construe them "liberally in favor of the party opposing the motion to dismiss." *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009). A court may dismiss a claim if the Court finds on the face of the pleading that "there is an insurmountable bar to relief indicating that the plaintiff does not have a claim." *Ashiegbu v. Purviance*, 76 F. Supp.2d 824, 828 (S.D. Ohio 1998), *aff'd* 194 F.3d 1311 (6th Cir. 1999), *cert. denied*, 529 U.S. 1001, (2000), a bar which may be raised by a statute of limitations defense.

Claims set forth in a complaint must be plausible, rather than conceivable. *Twombly*, 550 U.S. at 570. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]'— 'that the

---

[1] Girard filed a memorandum in opposition to D&L's motion to dismiss. ECF No. 63. Girard filed a memorandum in opposition to Carrizo's motion for judgment on the pleadings. ECF No. 58.

3

(4:13CV00393)

pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. Pro. 8(a)(2)). The factual allegations in the complaint "must contain something more . . . than . . . merely creat[ing] a suspicion of a legally cognizable right." *Twombly*, 550 U.S. at 555-56 (quoting 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, p. 235–236 (3d ed. 2004)). In addition to reviewing the claims set forth in the complaint, a court may also consider exhibits, public records, and items appearing in the record of the case as long as the items are referenced in the complaint and are central to the claims contained therein. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. Discussion

**A. Claims that the Lease is Void**

**1. Compliance with Statutory Requirements**

Carrizo and D&L assert that Girard's first counterclaim and crossclaim, that the lease is void for the failure to comply with statutory mandates, is time-barred by R.C. § 733.60. ECF Nos. 52 and 53. Girard alleges that it did not comply with the statutory mandates, such as the advertising and bidding processes.[2] ECF No. 47. Section 733.60 states "[n]o action to enjoin the performance of a contract entered into . . . by a municipal corporation shall be brought or maintained unless commenced within one year from the date of such contract . . ." R.C. § 733.60. Girard is a municipal corporation subject to this one year statute of limitations. Girard entered into the contract with D&L when Girard signed the Lease on March 16, 2006. ECF No. 50.

---

[2] In a previous motion to dismiss filed by Huntington, the Court found that an identical claim by Girard against Huntington was untimely and barred by R.C. § 733.60. ECF No. 36.

4

(4:13CV00393)

Because the counterclaim and crossclaim against Carrizo and D&L were filed on May 14, 2013, they are time-barred if R.C. § 733.60 applies.  Id.

Girard claims that R.C. § 733.60 does not apply because the contract is void *ab initio*. ECF No. 30.  Relying on Ohio law, the Court rejects this argument for the reasons articulated in its ruling docketed at ECF No. 36.[3]  Accordingly, the Court grants Carrizo's motion for judgment on the pleadings and D&L's motion to dismiss regarding Girard's first counterclaim and crossclaim.

Girard also argues that the Lease is void because D&L failed to exercise due diligence to ensure that all statutory requirements preceding the execution of the Lease were fulfilled.  To support its position, Girard relies on Lathrop v. Toledo, 5 Ohio St.2d 165 (1966).  In that case, the court held that the City of Toledo could not assert its own breach of contract as a defense to plaintiff's action against the City for failure to pay, *inter alia*, for extra work performed.  Id. at 173-74.  The cases cited with approval in Lathrop for the proposition that a private contractor's non-compliance with various statutorily required formalities voided the contract and precluded recovery by the contractor from the public entity are distinguishable from the matter before the

---

[3] The ruling stated, in relevant part: "[Girard's argument] was squarely rejected by the Ohio Supreme Court in a case that, although decided in 1933, remains good law. Dehmer v. Campbell, 127 Ohio St. 285, 288, 188 N.E. 6 (1933) ("the plaintiff further urges that the word 'contract' as used in these sections should be so construed as to limit it to *valid* contracts, and not to include contracts that are claimed, as here, to be void ab initio. This court is of the opinion that there is nothing in the context to justify such an inference"); see Village of Lordstown ex rel. Kibler v. Craigo, No. 93-T-4919, 1994 WL 321109 at *3 n.2 (Ohio App. 11 Dist. June 30, 1994) (*Dehmer* "concluded that the term 'contract' used in the predecessors to R.C. 733.56 and 733.60 was not limited in application to valid contracts, but included contracts which are claimed to be void *ab initio*").

5

(4:13CV00393)

Court. *Id.* at 172. In those cases, the courts found the contracts void *ab initio*. *Id.* at 173. Here, because the Court does not find the lease to be void *ab initio*, and because the City failed to adjudicate its claims within the requisite time period, the Court will not entertain arguments about D&L's lack of due diligence.

### 2. Meeting of the Minds for Lease Execution

Counterclaim and Crossclaim Four alleges that the Lease is void "for lack of a meeting of the minds and the lack of a mutually agreed upon written lease agreement between the City and D&L . . ." because D&L did not countersign the document. ECF No. 50. Girard states that "D&L prepared the form of lease provided to the City." ECF No. 50. D&L contends that Ohio's Statute of Frauds permits the enforcement of a contract so long as it is signed by the party to be charged. ECF No. 43. Indeed, the Ohio Revised Code allows certain agreements made in writing to be signed only by the party to be charged. R.C. § 1335.05[4]; *see also Sanders v. McNutt*, 147 Ohio St. 408, 409-10, 72 N.E.2d 72. (1947). The party to be charged is the party against whom the contract is sought to be enforced in the particular action or proceeding by the other party to the contract. *Id.* Here, as lessor, Girard is the party to be charged, as D&L seeks to enforce the Lease as a valid agreement. D&L prepared the Lease and Girard signed it, thereby abiding by the Statute of Frauds. Although the extent of performance is in dispute, both parties have performed and accepted some performance of the other party under the terms of the agreement. The Court,

---

[4] This section, entitled "Certain Agreements to be in Writing, states, in relevant part: "No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person . . . unless the agreement upon which such action is brought . . . is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."

(4:13CV00393)

therefore, grants Carrizo's motion for judgment on the pleadings and D&L's motion to dismiss Girard's fourth counterclaim and crossclaim.

**B. Claims that D&L and Carrizo Failed to Develop or Construct on the Premises**

In Counterclaims and Crossclaims Two, Five, Six and Eight, Girard alleges that the Lease is void because Carrizo and D&L breached the contract with respect to an implied covenant to develop additional wells (Counterclaim and Crossclaim Two), D&L failed to pay delay rentals on such additional wells (Counterclaim and Crossclaim Five), and D&L failed to pay spud payments and gas allotment fees on these additional wells (Counterclaim and Crossclaim Six). Counterclaim and Crossclaim Eight asserts that Girard is entitled to declaratory judgment, quiet title, and damages based on the allegations in Counterclaims and Crossclaims Two, Five, and Six. ECF No. 50.

> Section 3 of the Lease provides:
>
> This lease, however, shall become null and void and all rights of either party hereunder shall cease and terminate unless, within twelve (12) months from the date hereof, a well shall be commenced on the premises, or unless the Lessee shall thereafter pay a delay rental of $500.00 (Five-hundred and 00/100 Dollars), payment to be paid yearly until the commencement of a well.  ECF No. 43.

Carrizo and D&L contend that "a well shall be commenced on the premises" implies one well on the entire property, rather than one well on each parcel. *Id*.  To the contrary, Girard claims that the Lease and ordinance require one well to be built on each of the four parcels.  Girard relies on the following language in a city ordinance:

> Said oil and gas lease shall include one well on each of the properties of Liberty Memorial Park, Tod Park, and Girard City Water Treatment Plant and one specific, directionally drilled well, at Girard upper Lake, labeled Well #1 as per

(4:13CV00393)

Exhibit D and described more specifically in Exhibit C of the lease."[5] ECF No. 47.

Additionally, Girard argues that the language of the ordinance carried over into the Lease, as section 3 of the ordinance states "the proposed oil and gas lease is attached to this Ordinance and fully incorporated herein." ECF No. 1-1.

When contract language uses words capable of two conflicting, yet reasonable interpretations, the contract is ambiguous. *See United Tel. Co. of Ohio v. Williams Excavating, Inc.*, 125 Ohio App.3d 135, 153 (1997). Here, Girard interprets the Lease as requiring the construction of a well on each of the four separate parcels, whereas D&L interprets the Lease as requiring only one well. Because the actual language in the Lease and one of its incorporated exhibits lend to ambiguity, both parties have reasonable interpretations. The Court finds that Girard presents plausible claims on these counts and, therefore, it denies Carrizo's motion for judgment on the pleadings and D&L's motion to dismiss regarding Counterclaims and Crossclaims Two, Five, Six, and Eight.

**C. Extent of Subsurface Rights of Lessee**

With respect to Counterclaim and Crossclaim Three, which alleges that the Lease does not give the lessee the right to drill below the Clinton Sands formation, the Court also finds the lease ambiguous. For example, the granting clause (paragraph 1) of the Lease states:

> That the Lessor, for and in consideration of one dollar ($1.00) and other valuable consideration in hand paid by the Lessee, the receipt of which is hereby acknowledged,

---

[5] Exhibit C of the Lease contains a legal description of the Premises in four separate paragraphs that describes the geographic location of the respective four properties covered by the Lease. ECF No. 1-2 at 6.

(4:13CV00393)

> and the covenants and agreements hereinafter contained, does hereby lease and let exclusively unto the Lessee, for the purpose of drilling, operation for, producing and removing oil and gas and all the constituents thereof, and of injecting air, gas, brine and other substances from any source and into any subsurface strata . . . including but not limited to the right to inject any wells on the leasehold property and to otherwise conduct all such secondary or tertiary operations as may be required in the opinion of the Lessee), and to transport by pipelines or otherwise across and through said lands oil, gas and constituents from the subject lands, and other properties regardless of the source of such gas or the location of the wells . . . . ECF No. 1-2.

D&L argues that while specific technology for oil and gas removal might not have existed at the Lease's formation, the Lease expressly permits the potential development of new technologies. ECF No. 43. Girard disagrees and says that because there was no meeting of the minds as to developing the sands formations, D&L was not authorized to drill deeper than the Clinton Sands formation. ECF No. 50. Because Girard has pled sufficient facts for a plausible claim that the Lease may not have conferred the right to drill deeper than the Clinton Sands formation, the Court must deny Carrizo's motion for judgment on the pleadings and D&L's motion to dismiss Girard's third counterclaim and crossclaim.

**D. Gas Allotment Payments on Drilled Well**

Girard claims that D&L failed to pay the gas allotment fees on the drilled well as required by paragraph 23 of the Lease. D&L did not move to dismiss this claim. Carrizo, however, did move to dismiss this claim as time-barred by R.C. §2305.041, which governs the statute of limitations for actions regarding a breach of a lease or a license for oil or gas drilling with respect to "the calculation or payment of royalties." R.C. §2305.041. Here, however, Girard does not claim that D&L failed to pay royalty fees, which are governed by a different paragraph of the Lease (paragraph 4). Because R.C. §2305.041 does no govern gas allotment payments, which are

9

(4:13CV00393)

distinct from royalty payments, the Court denies Carrizo's motion for judgment on the pleadings on Girard's seventh counterclaim.

**E. Carrizo's Motion to Strike Portions of Girard's Opposition Memorandum**

Carrizo filed a motion to strike portions of Girard's Opposition Memorandum, arguing that Girard refers to evidence outside of the pleadings.  In a motion to dismiss or a motion for judgment on the pleadings, a court is limited to reviewing "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss *so long* as they are referred to in the Complaint . . ." *Bassett*, 528 F.3d at 430; see also *Weiner v. Klais & Co., Inc.,* 108 F.3d 86, 88 (6th Cir. 1997) ("matters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss.")  Girard's evidentiary support in its opposition memorandum, which includes public records and information obtained from D&L during discovery, was not part of Girard's initial crossclaims and counterclaims and is, therefore, best reserved for the parties' motions for summary judgment, already filed with the Court.  See *Marsilo v. Vigluici*, 924 F.Supp.2d 837, 847 (N.D. Ohio 2013) (stating that it is within the district court's discretion whether to convert a motion to dismiss to one for summary judgment or "to exclude the extra-pleading materials and apply the standard set forth in Rule 12(c)").  The Court, therefore, grants Carrizo's motion to strike the portions of Girard's opposition memorandum that refer to materials outside of the pleadings.

### III.  Conclusion

For the above reasons, the Court grants Carrizo's motion for judgment on the pleadings

Case: 4:13-cv-00393-BYP  Doc #: 77  Filed:  12/15/14  11 of 11.  PageID #: 1088

(4:13CV00393)

and D&L's motion to dismiss, in part, and denies the motions, in part.  Accordingly, Girard's first and fourth counterclaims and crossclaims are dismissed.  Girard's second, third, fifth, sixth, seventh, and eighth counterclaims and crossclaims remain.  The Court grants Carrizo's Motion to Strike in its entirety.

       IT IS SO ORDERED.

December 15, 2014                          */s/ Benita Y. Pearson*
Date                                         Benita Y. Pearson
                                                   United States District Judge